UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| WILLIAM CLAYTON LEGRANDE, ET AL. | CIVIL ACTION NO. 22-1349 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| VINE ENERGY OPERATING LP | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a motion to dismiss [Record Document 6] filed by Defendant Vine Energy Operating LP (*f/k/a Vine Oil and Gas LP*) ("Vine Energy"). The motion has been fully briefed. For the foregoing reasons, Defendant's motion [Record Document 6] is **GRANTED**.

**I.  Background**

This diversity jurisdiction action alleges the breach of various mineral leases. Plaintiffs are William LeGrande, Robert LeGrande, and Dolly Belle Prince LeGrande (collectively referred to as "Plaintiffs"). Plaintiffs own mineral interests in sections of a property located in Red River Parish. Record Document 1 at ¶ 5. In 2018, Plaintiffs negotiated and signed lease agreements ("the Leases") with Vine Energy. *Id.* at ¶¶ 13, 16-17. The Leases contain a "No Chesapeake" clause. *Id.* at ¶ 14. The clause states:

> NO CHESAPEAKE: Except in the case of transfers by Lessee through merger, it is agreed and understood that Lessee shall not assign, sublease or transfer any interest in this lease to Chesapeake Energy, nor any entities owned or controlled by the said partnership, without the written consent of Lessor.

*Id.* at ¶ 18. Plaintiffs aver that they would not have signed the Leases absent the inclusion of the "No Chesapeake" clause because Chesapeake Energy ("Chesapeake") "has a

1

reputation of not treating their lease royalty owners fairly in the way Chesapeake pays the royalties. Plaintiffs did not want Chesapeake to ever own the mineral leases that their mineral rights were subject to." *Id.* at ¶ 14.

In November 2021, Plaintiffs allege that Chesapeake purchased Vine Energy, Inc., which included the acquisition of its subsidiary, Vine Energy. *Id.* at ¶¶ 19-20. In April 2022, Plaintiffs further allege that they "received a letter from Chesapeake advising it has completed its 'integration with Vine Energy, Inc. and all of its affiliates and subsidiaries,' including Defendant," and would be disbursing all royalty payments moving forward. *Id.* at ¶ 21. Plaintiffs claim that they began receiving royalty payments from Chesapeake in late April 2022. *Id.* at ¶ 22.

Plaintiffs argue that Vine Energy breached the terms of the Leases by "transferring its interest in the Leases to Chesapeake Energy without the written consent of Plaintiffs." *Id.* at ¶ 24. They further contend that the transfer of Vine Energy's interest in the Leases occurred only because of Chesapeake's acquisition of Vine Energy's parent company, and not through merger, as required by the "No Chesapeake" clause. *Id.* at ¶ 28. Plaintiffs allege that Chesapeake intends to deduct approximately $5,000,000 in expenses from their royalty payments over the next ten years. *Id.* at ¶¶ 34-36. Plaintiffs argue the Leases became void and/or unenforceable when they were impermissibly transferred to Chesapeake and seek damages for loss of royalty payments, a depreciation in property value, disgorgement, emotional distress, attorneys' fees, and other expenses. *Id.* at ¶ 41.

Defendant requests that the Court grant its motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Record Document 6-1 at 1.

Defendant filed two exhibits with its motion. *See* Record Documents 6-2 and 6-3. However, Defendant requests that should the Court be prohibited from considering the corresponding exhibits in its ruling on Defendant's motion to dismiss, the Court should convert the motion to dismiss into a motion for summary judgment. *See* Record Document 6-1 at 3-4.

## II. Law and Analysis

### a. Motion to Dismiss Standard

To survive a motion to dismiss brought under Rule 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all of the factual allegations in the complaint in determining whether plaintiff has stated a plausible claim. *See Twombly*, 550 U.S. at 555; *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A court may dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). If a complaint cannot meet this standard, it may be dismissed for failure to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678-79. A court does not evaluate a plaintiff's likelihood for

success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

### b. Consideration of Defendant's Exhibits

The Court must first resolve the issue of what exhibits it may consider in ruling on Defendant's motion to dismiss. Vine Energy filed two exhibits along with its motion to dismiss. Exhibit 1 is comprised of documents that are titled "State of Delaware Certificate of Merger" and Exhibit 2 is a document titled "Chesapeake Energy Corporation Assistant Secretary's Certificate." *See* Record Documents 6-2 and 6-3. Defendant avers that the Court may consider these documents in its ruling because they are central to Plaintiffs' claims. *See* Record Document 6-1 at 3. Plaintiffs argue that Fifth Circuit precedent prohibits the Court from considering the documents. *See* Record Document 14 at 9.

The Fifth Circuit has held that "[i]n considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). However, as the Fifth Circuit articulated in the same ruling,

> We note approvingly . . . that various other circuits have specifically allowed that documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim. In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated.

*Id.* at 498-99 (internal citations and quotation marks omitted).

Plaintiffs do not explicitly reference either of these exhibits in the pleadings. The Court finds that the documents in Exhibit 1 [Record Document 6-2] are central to Plaintiffs'

4

claims because they are public records that directly address whether Chesapeake and Vine Energy merged. As such, the Court will rely upon these documents in its ruling on Defendant's motion to dismiss. The Court will not rely upon the affidavit or the chart contained in Exhibit 2 [Record Document 6-3] because these documents are not proper motion to dismiss evidence under the Fifth Circuit's standard.

### c. Interpretation of Contracts in Louisiana

In a mineral lease case, it is well-established that a court must apply the law where the real property in question is located. *See Alyce Gaines Johnson Special Tr. v. El Paso E & P Co., L.P.*, 773 F. Supp. 2d 640, 644 (W.D. La. 2011), *aff'd*, 438 F. App'x 340 (5th Cir. 2011) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Ashland Chem. Inc. v. Barco Inc.*, 123 F.3d 261, 265 (5th Cir. 1997)); *see also Total E & P USA Inc. v. Kerr-McGee Oil & Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013). As previously mentioned, the parcels of land bound by the Leases are located in Red River Parish, Louisiana. Record Document 1 at ¶ 5. Accordingly, Louisiana state law governs how these mineral leases should be interpreted.

Louisiana defines a mineral lease as "a contract by which the lessee is granted the right to explore for and produce minerals." La. R.S. § 31:114. Though the lessee does not owe any fiduciary duties to the lessor, the lessee is still required to "perform the contract in good faith and to develop and operate the property leased as a reasonably prudent operator for the mutual benefit of himself and his lessor." La. R.S. § 31:122.

In Louisiana, "[a] mineral lease is most commonly interpreted using the general rules of contract interpretation in the Louisiana Civil Code." *Greenwood 950, L.L.C. v.*

*Chesapeake La., L.P.*, 683 F.3d 666, 668 (5th Cir. 2012) (citing *Cascio v. Twin Cities Dev., LLC,* 45,634 (La. App. 2 Cir. 9/22/10); 48 So. 3d 341, 342-43). Contracts are interpreted by finding the "common intent of the parties," La. Civ. Code art. 2045 (1985), where "words of a contract must be given their generally prevailing meaning" and "[w]ords of art and technical terms must be given their technical meaning when the contract involves a technical matter," La. Civ. Code art. 2047 (1985). A contract is ambiguous when "either it lacks a provision bearing on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed." *Campbell v. Melton*, 2001-2578 (La. 5/14/02); 817 So. 2d 69, 75 (internal citations omitted). Ambiguous terms are construed against the contract's drafter. *See* La. Civ. Code art. 2056 (1985)). A court is "entitled to 'draw on its judicial experience and common sense' when interpreting contracts at the motion to dismiss stage." *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 348 (5th Cir. 2020) (citing *Iqbal*, 556 U.S. at 676).

### d. Analysis

Turning to the motion to dismiss, Defendant argues that it has not breached the Leases with Plaintiffs because Chesapeake acquired Vine Energy through merger, qualifying for the exception under the "No Chesapeake" clause. Record Document 6-1 at 4. Plaintiffs—who are laypeople—argue that they "did not intend for the term 'merger' in the No Chesapeake Clauses[] to be a term of art." Record Document 14 at 5. Instead, Plaintiffs aver that "the term 'merger' was intended to have its generally understood meaning and require that Defendant, or its assignee, merge with Chesapeake to form a new entity with

6

new leadership and a combination of each former company's personnel, assets, funds, and corporate culture." *Id.*

The definition of the term "merger" is consistent across various legal and general reference materials. Black's Law Dictionary defines a corporate merger as "[t]he absorption of one organization (esp. a corporation) that ceases to exist into another that retains its own name and identity and acquires the assets and liabilities of the former." *Merger,* BLACK'S LAW DICTIONARY (11th ed. 2019). Ballentine's Law Dictionary defines a merger of corporations as "[a] combination whereby one of the constituent companies remains in being, absorbing the other or all the other constituent corporations." *Merger of corporations,* BALLANTINE'S LAW DICTIONARY (3rd ed. 2010) (citation omitted). According to Merriam-Webster, a merger is "the absorption of an estate, a contract, or another interest in another, of a minor offense in a greater, or of a cause of action into a judgment." *Merger,* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/merger (last visited Jun. 6, 2023). Lastly, dictionary.com defines a merger as "a statutory combination of two or more corporations by the transfer of the properties to one surviving corporation." *Merger*, Dictionary.com, https://www.dictionary.com/browse/merger (last visited Jun. 6, 2023). The Court lists these definitions from different types of references to demonstrate that the generally prevailing meaning of the term "merger" is clear and unambiguous.

The Court must then determine whether, at this stage of litigation, it can be determined that Chesapeake and Vine Energy merged. As previously discussed, Defendant provided two separate certificates of merger. *See* Record Document 6-2. The certificates of merger are signed by the Delaware Secretary of State, Jeffrey Bullock. *Id.* These certificates

7

outline the merger agreements' basic terms, including the names of the surviving companies, the names of the corporations that merged into the surviving companies, and the dates that the mergers became effective. *Id.* Plaintiffs contend that Defendant's exhibits fail to prove that the two companies merged. *Id.* at 12. Specifically, "[t]he exhibits do not contain the actual contract(s) or agreements that effectuated the transactions whereby Chesapeake acquired Vine Energy, Inc., and Defendant. They're merely self-serving summaries of supposed facts that Plaintiffs have not been privy to." *Id.*

The Court disagrees. The purpose of filing these documents was to record two mergers. The first merger took place between Hannibal Merger Sub, Inc., and Vine Energy Inc., resulting in the surviving company, Vine Energy, Inc. The second merger occurred between Hannibal Merger Sub, LLC, and Vine Energy, Inc., the surviving company being Vine Energy, LLC. Plaintiffs do not contend Defendant's assertion that Hannibal Merger Sub, LLC, and Hannibal Merger Sub, Inc., were subsidiaries of Chesapeake, nor do they dispute that Vine Energy, LLC, the surviving entity of the two mergers, is also a wholly owned subsidiary of Chesapeake. Moreover, the certificates of merger are official public records filed with and authenticated by the Delaware Secretary of State. They are not merely "self-serving summaries," as Plaintiffs suggest, but public records. Furthermore, Plaintiffs fail to enumerate any specific issues regarding the authenticity of these documents.

The certificates of merger indicate that the corporations merged "*into*" the surviving entity. *See* Record Document 6-2 at 2, 5 (emphasis added). The language used in those public records is consistent with the definitions of "merger" that the Court enumerated previously whereby one company absorbs another. Considering the generally accepted

8

meaning of the term "merger" and the public records provided by Defendant, the Court finds that a merger between Chesapeake's subsidiaries and Vine Energy's parent company occurred. The Court acknowledges that Plaintiffs may have subjectively had a different understanding of the meaning of the word "merger" and thought that the drafted provision would protect them against Chesapeake. However, it is clear that the "No Chesapeake" clause does not apply to bar any interest Chesapeake may have acquired in the Leases. Plaintiffs' claims cannot survive.

### III. Conclusion

For the foregoing reasons, **IT IS ORDERED** that Defendant's motion to dismiss [Record Document 6] is **GRANTED**.[1] Plaintiffs' claims are **DISMISSED WITH PREJUDICE**. A judgment will be issued alongside this ruling.

**THUS DONE AND SIGNED** this 12th day of July, 2023.

_____
**ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE**

---

[1] This ruling has rendered Plaintiffs' motion for oral argument [Record Document 16] moot.